**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**STATESBORO DIVISION**

| | | |
|---|---|---|
| GSU FOUNDATION UNIVERSITY | ) | |
| HOUSING FOUNDATION ONE, LLC | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action |
| | ) | File No. <u>6:11-cv-00104-LGW -GRS</u> |
| vs. | ) | |
| | ) | |
| CAPSTONE DEVELOPMENT CORP., | ) | |
| CAPSTONE BUILDING CORP. and BR | ) | |
| BRICK & STONE, L.P. | ) | |
| | ) | |
| Defendants. | ) | |

### <u>DEFENANT CAPSTONE DEVELOPMENT CORP'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR STAY PENDING CONTRACTUAL DISPUTE RESOLUTION PROCEDURE</u>

Pursuant to 9 U.S.C. § 1 <u>et</u> <u>seq</u>., Defendant Capstone Development Corp. ("Capstone Development") files this Memorandum of Law in Support of Motion to Stay Pending Contractual Dispute Resolution Procedure representing to the Court as follows:

### <u>INTRODUCTION</u>

GSU Foundation University Housing Foundation One, LLC's ("GSU Foundation") lawsuit against Capstone Development should be stayed pending completion of a contractual Dispute Resolution procedure that includes non-binding mediation and binding arbitration. GSU Foundation's purported claims arise out of a written Development Agreement with Capstone Development Corp. ("Capstone Development") on a construction project that requires GSU Foundation to resolve its claims through a meeting of senior representatives, non-binding mediation, and binding arbitration. The Dispute Resolution procedure evidences the parties' clear, expressed intention to resolve their disputes through means other than litigation. By ignoring these alternative dispute resolution procedures and filing a lawsuit in Court, GSU

Foundation violated the terms of the Development Agreement.  This Court should enforce the Development Agreement, and stay GSU Foundation's lawsuit so that GSU Foundation may follow the requirements of its Subcontract to resolve its claims.

## STATEMENT OF FACTS

**A.   THE DEVELOPMENT AGREEMENT REQUIRES ALTERNATIVE DISPUTE RESOLUTION, INCLUDING BINDING ARBITRATION.**

GSU Foundation and Capstone Development entered into a Student Housing Facilities Project Development Agreement ("the Development Agreement") dated October 1, 2002.  Under the Development Agreement, Capstone agreed to develop the Southern Courtyard and Southern Pines Student Housing Complexes on the Georgia Southern campus ("the Project").   A copy of the Development Agreement is attached to the Complaint as Exhibit A.

Exhibit 14 of the Development Agreement sets forth a Dispute Resolution agreement between GSU Foundation and Capstone Development that calls for a settlement meeting between representatives, a settlement meeting between senior representatives, non-binding mediation, and binding arbitration, as follows:

## DISPUTE RESOLUTION

1.   In the event a claim, dispute, or controversy (defined for the purposes of this Exhibit as "Claim") arises out of or relates to this Agreement, Developer's performance under this Agreement, or the relationship or obligations of the Parties, Developer and the LLC agree that, as a condition precedent to mediation or arbitration under this Agreement, the Developer's Representative and the LLC's Representative shall meet and attempt to resolve the matter.  If the matter is not resolved by these representatives within 15 days after the date the Claim arose, then Developer and the LLC shall each designate a senior representative (with similar or equivalent organizational stature).   Each designated senior representative shall have the authority to settle or compromise the Claim, and they shall meet at a mutually agreeable time and place within 30 days after the date the

Claim arose, and thereafter as often as they deem reasonably necessary to exchange relevant information and to attempt to resolve the Claim.

2.   If the Claim has not been resolved within 15 days after the date on which the senior representatives first meet, then either Party may request a non-binding mediation of the Claim by providing the other written notice of the desire to mediate the Claim.  Once such a mediation notice is issued by one of the Parties, the following mediation procedures shall be mandatory unless the Parties agree in writing to waive mediation.   All such mediations shall occur before a single mediator.  The mediator shall be selected by the senior representatives referred to in Paragraph 1 above, but if they are unable to agree upon an acceptable mediator within ten days after the date the written notice of desire to mediate is received, either Party may petition the Atlanta Regional Office of the American Arbitration Association ("AAA") for the appointment of a mediator, and the mediation, including the selection of the mediator, shall occur pursuant to the AAA's Construction Industry Mediation Rules then in effect.  Notwithstanding the above, demand for mediation shall be made within a reasonable time after the Claim has arisen, but in no event after the date when notification of legal or equitable proceedings would be barred by the applicable statute of limitations.

3.   <u>If the Claim has not been resolved pursuant to mediation within 60 days after initiation of the mediation procedure, then either Party may submit such Claim to final and binding arbitration to be conducted in accordance with the Construction Industry Dispute Resolution  Rules of the AAA as in effect on the date of the commencement of the arbitration proceeding.  Unless otherwise agreed by the Parties, the situs of the arbitration under this Agreement shall be Atlanta, Georgia, and all arbitration hearings shall be transcribed by court reporter, with transcripts thereof promptly available to the Parties.  Judgment on the award of the arbitral tribunal may be entered in any court of competent jurisdiction.</u>  The arbitration is to be conducted by three neutral arbitrators, with each Party to select one neutral arbitrator, and such two arbitrators to select the third neutral arbitrator who shall be the arbitral panel's chair.

4.   The arbitral panel may grant interim measures includes injunctions, attachments, and conservation orders in appropriate circumstances, which measures the Parties agree may be immediately enforced by the arbitral panel or by court order.  Hearings on requests for interim measures may be held in person, by telephone, or by video conference, and requests for relief, responses, briefs, or memorials may be sent to, and orders or awards received from, the arbitral panel by facsimile or other similar means which include a confirmation of delivery.  Notwithstanding the requirements for alternative dispute resolution procedures in this Exhibit, prior to the constitution of the arbitral panel and thereafter as necessary to enforce the arbitral panel's rulings or in the absence of the jurisdiction of the arbitral panel to rule on interim measures in a given jurisdiction, either Party may apply to a court for interim measures, and the Parties agree that seeking

3

5.      The Parties expressly agree that any court with jurisdiction may order the consolidation of any Claim subject to arbitration under this Agreement with any related arbitral claim, controversy, or dispute, as the court may deem necessary in the interest of justice, efficiency, or on such other grounds as the court may deem appropriate.

6.      Notwithstanding any Claim between the LLC and Developer or any claim or controversy between Developer and any Consultant, or any claim or controversy between or among such Consultants, and so long as the Draws, pursuant to Article IX, and the Development Fee, pursuant to Article XVI, are being timely paid, then it shall be the responsibility of Developer to continue to perform all of its Services diligently in a good and workmanlike manner in conformity with this Agreement.

Complaint, Exh. A, at pp. 71-72 [Emphasis added].

## B.      GSU FOUNDATION HAS NOT COMPLIED WITH THE ALTERNATIVE DISPUTE RESOLUTION PROCEDURES IN THE SUBCONTRACT.

After the Project was complete, disputes arose between GSU Foundation and Capstone Development.  According to the Complaint, certain defects were identified by GSU Foundation after substantial completion, and Defendant BR Brick performed repairs to those defects in May of 2008.  Complaint, ¶ ¶ 15-16.  After the repairs were completed, GSU Foundation claims that it found further defects in the initial construction and attributable to the attempted repairs.  Complaint, ¶ 20.  GSU Foundation contends that Capstone Development and Capstone Building have refused to correct these defects.  Complaint, ¶ 21.

Instead of complying with the Dispute Resolution procedure in the Development Agreement, GSU Foundation filed a lawsuit on August 11, 2011, against Capstone Development, Capstone Building Corp., and BR Brick & Stone, L.P., in the Superior Court of Bulloch County, Georgia.  The Lawsuit was filed without the meeting of representatives or senior representatives required under Exhibit 14.1.  It was filed without the parties conducting a non-binding mediation under Exhibit 14.2.  It was filed without the parties conducting binding arbitration under Exhibit

14.3.  GSU Foundation's lawsuit indisputably violated the Dispute Resolution procedure in the Development Agreement.

On September 16, 2011, GSU Foundation's lawsuit was removed to this Court on the basis of diversity jurisdiction and should now be stayed by this Court so that GSU Foundation can comply with the Dispute Resolution procedure set forth in the Development Agreement. Among other things, GSU Foundation and Capstone Development must conduct a settlement meeting between representatives; they must conduct a settlement meeting between senior representatives; they must engage in non-binding mediation; and they must engage in binding arbitration.  In other words, if the disputes cannot be settled through meetings between the parties or mediation, they must be resolved by binding arbitration, not litigation in this Court.

## ARGUMENT AND CITATION OF AUTHORITY

**A.**  **THE WRITTEN DISPUTE RESOLUTION CLAUSE IN THE DEVELOPMENT AGREEMENT IS ENFORCEABLE UNDER THE FEDERAL ARBITRATION ACT.**

Where there is interstate commerce, the enforceability of a Dispute Resolution clause requiring arbitration is governed by the Federal Arbitration Act (hereinafter "FAA"), 9 U.S.C. § 1 et seq. See Allied-Bruce Terminix Co. v. Dobson, 115 S. Ct. 834, 836-37 (1995).  The Development Agreement, itself, specifically provides that "the arbitration procedures and provisions of this Agreement shall be governed by the Federal Arbitration Act."  Complaint, Exhibit A, Section XXXIII.  Section 2 of the FAA imposes two requirements for an arbitration agreement to be enforced.  First, the arbitration agreement must be in writing.  Second, the contract between the parties must evidence a transaction involving "commerce."  Both requirements are easily met here.

5

The first requirement is met because Exhibit 14 of the Development Agreement contains a written arbitration agreement.  Specifically, Section XXVII of the Development Agreement provides that "[t]he Parties shall resolve all disputes as provided in Exhibit 14."  Complaint, Exhibit A, at p. GSU 000022.  Exhibit 14 is a written Dispute Resolution procedure, which is set forth in full above.  Paragraph 3 of Exhibit 14 requires GSU and Capstone Development to arbitrate their disputes in accordance with the Construction Industry Rules of the American Arbitration Association.  Complaint, Exhibit A, at p. GSU 000092.

The second requirement is met because the Development Agreement evidences a transaction involving "Commerce", which is defined by section 1 of the FAA as interstate commerce.  9 U.S.C. § 1.  In Allied-Bruce Terminix Cos. v. Dobson, 115 S.Ct. at 843 (1995), the United States Supreme Court held that the phase "involving commerce" is the functional equivalent of "affecting commerce," and therefore expresses Congressional intent that the FAA apply to the fullest extent of the Commerce Clause.  .  Obviously, this entails an extremely broad application of the FAA. See e.g. Wickard v. Filburn, 317 U.S. 111 (1942) (farmer's production for his own consumption affects commerce and thus can be regulated by Commerce).  Arbitration provisions, such as the one in this case, are to be broadly construed in favor of arbitration. See Granite Rock Co. v. Int. Broth. Of Teamsters, 130 S.Ct. 2487 (2010).

Here, GSU Foundation is a Delaware limited liability company.  Affidavit of Leland Keller ("Keller Aff."), at ¶  5.  The Project is located in Georgia, while Capstone Development's headquarters are located in Alabama.  Keller Aff., at ¶ 5.  The Project involved transmission of correspondence, plans, specifications, laborers, engineers, and materials across state lines through interstate commerce.  Keller Aff., at ¶5.  It is well settled that construction projects, such as the one at issue in this case, generally involve interstate commerce, for purposes of Federal Arbitration Act (FAA), because most building materials pass in interstate commerce. See e.g. G.D. Searle & Co. v. Metric Constructors, Inc. 572 F.Supp. 836 (1983)(finding FAA applied to

construction project in Georgia involving North Carolina corporation and Delaware corporation with principal place of business in Illinois); see also Krut v. Whitecap Housing Group, LLC, 268 Ga.App. 436, 602 S.E.2d 201 (2004); White v. Tidal Construction Co., 261 Ga.App. 670, 583 S.E.2d 466 (2004); Simmons Co. v. Deutsche Financial Svcs. Corp., 243 Ga.App. 85, 89, 532 S.E.2d 436 (2000). Therefore, the Development Agreement evidences a transaction involving commerce, and the arbitration clause in Exhibit 14 is enforceable under the FAA.

**B.     THE DISPUTE RESOLUTION CLAUSE IN THE DEVELOPMENT AGREEMENT REQUIRES ARBITRATION OF THE CLAIMS ASSERTED BY GSU FOUNDATION.**

**1.     Exhibit 14 Requires Arbitration.**

The arbitration clause in Exhibit 14, Paragraph 3, provides that "[i]f the Claim has not been resolved pursuant to mediation. . . , then either Party may submit such Claim to final and binding arbitration to be conducted in accordance with the Construction Industry Dispute Resolution Rules of the AAA. . . ." Complaint, Exh. A, at pp. 71-72 [emphasis added]. GSU Foundation may argue that that this arbitration clause does not require arbitration because it uses the term "may" instead of "must," but such an interpretation is not consistent with the parties' intent or with judicial interpretations of similar clauses. Use of the term "may" means that the parties *may* arbitrate or *may* do nothing; it does not confer the option to litigate in Court.

The basic purpose of the Federal Arbitration Act is to overcome courts' refusals to enforce agreements to arbitrate. Allied-Bruce Terminix Co. v. Dobson, 115 S. Ct. at 838. The United States Supreme Court has continually and unequivocally recognized that "[a]n agreement to arbitrate is valid, irrevocable, and enforceable, as a matter of law." Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987). Furthermore, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Id. (emphasis added); see also Moses H. Cone Memorial Hospital v. Mercury Construction Co., 460 U.S. 1, 24-25 (1983). Guided by this

strong federal pro-arbitration policy, this Court should require the parties to arbitrate their disputes.

Arbitration is the fourth step set forth in Exhibit 14, following a settlement meeting between representatives, a settlement meeting between senior executives, and nonbinding mediation. Keller Aff., at ¶7. Exhibit 14, Paragraph 3, provides that "If the Claim has not been resolved pursuant to mediation. . . , then either Party may submit such Claim to final and binding arbitration to be conducted in accordance with the Construction Industry Dispute Resolution Rules of the AAA. . . ." [Emphasis added] Keller Aff., at ¶7. Even though the parties used the word "may," the Parties intended that all disputes that could not be settled would be resolved through binding arbitration instead of litigation in a court. Keller Aff., at ¶7.

The parties the term "may" so that the parties were not automatically obligated to go to arbitration for every dispute that was negotiated by representatives, negotiated by executives or mediated. Keller Aff., at ¶8. For example, the dispute might settle during the meeting between representatives or senior representatives, or it might settle at mediation. Keller Aff., at ¶8. Even if the dispute could not be settled, the Parties understood that the claim might be abandoned because it was not substantial enough to warrant the time and expense of arbitration. Keller Aff., at ¶8. Hence, the term "may" was used to show the Parties' agreement that they "may" submit a dispute to arbitration or they "may not" because it had been settled or was not worth pursuing any further. Keller Aff., at ¶8. The parties did not intend the word "may" to mean that the parties were free to litigate their claims and disputes in court. Keller Aff., at ¶9. Rather, they intended that disputes would be settled, abandoned, mediated or arbitrated. Keller Aff., at ¶9. Arbitration was intended to be the exclusive means for resolving active disputes that could not be settled between the parties or through a mediator. Keller Aff., at ¶9.

1/2224135.1

It is well-established in this Circuit that an arbitration provision containing the word "may" is nonetheless mandatory.  The United States Supreme Court recognized that arbitration clauses providing that the parties "may" arbitrate require the parties to arbitrate.  Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 204 n. 1 (1985) ("[t]he use of the permissive 'may' is not sufficient to overcome the presumption that parties are not free to avoid the contract's arbitration procedures.")  Likewise, in Truck Drivers & Helpers Local Union v. Georgia Hwy. Express, Inc., 328 F.2d 93 (5th Cir. 1964), the Fifth Circuit reversed the U.S. District Court for the Northern District of Georgia for finding that a disputes clause using the word "may" was permissive.[1]

Other Federal Circuits have consistently recognized that arbitration provisions containing "may" are nonetheless mandatory.  United States v. Bankers Ins. Co., 245 F.3d 315, 320-21 (4th Cir. 2001)(reversing trial court and compelling arbitration, reasoning that use of permissive "may" gives a claimant the right to pursue arbitration or abandon its claim, not the right to pursue litigation); Am. Italian Pasta Co. v. Austin Co., 914 F.2d 1103, 1104 (8th Cir. 1990)(reversing trial court's holding that "such dispute or disagreement may be submitted to arbitration" was permissive, and ordering that the parties be compelled to arbitrate their disputes on remand); Local 771, IATSE, AFL-CIO v. RKO Gen., Inc., 546 F.2d 1107, 1115-16 (2d Cir. 1977)(holding that "may submit to arbitration" is mandatory); Nemitz v. Norfolk & W. Ry. Co., 436 F.2d 841, 849 (6th Cir. 1971); Deaton Truck Line, Inc. v. Local Union 612, 314 F.2d 418 (5th Cir. 1962)(holding that the term "may" gives either party the right to require the other party to arbitrate). These Courts interpreted the term "may" to instead refer to the plaintiff's choice in either taking the claim to arbitration or abandoning it.  Bankers Ins., 245 F.3d at 320-21 (quoting Austin v. Owens-Brockway Glass Container, Inc., 78 F.3d 875, 879 (4th Cir. 1996). The judge in

---

[1] In Bonner v. City of Pritchard, Al., 661 F.2d 1206, the Eleventh Circuit held that the decisions of the former Fifth Circuit which were handed down prior to September 30, 1981 would be binding precedent for all federal courts in the Eleventh Circuit.

<u>Austin</u> noted that a contrary interpretation "would render the arbitration provision meaningless for all practical purposes[,]" since parties "could always voluntarily submit[ ] to arbitration[.]" 78 F.3d at 879.

It is also important to recognize that the Development Agreement, itself, indicates mandatory arbitration.  Specifically, Section XXVII of the Development Agreement provides that "The Parties *shall* resolve all disputes as provided in Exhibit 14."  Complaint, Exhibit A, at p. GSU 000022 [Emphasis added].   This language, coupled with the cases cited above, leaves no doubt that GSU Foundation and Capstone Development are required to arbitrate their disputes.

> 2. **The Claims Asserted by GSU Foundation fall within the broad scope of the Dispute Resolution provision.**

The United States Supreme Court has recognized that the federal policy underlying the FAA requires courts to compel arbitration if any reasonable interpretation of the arbitration clause would cover the dispute(s) at issue.   <u>Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.</u>, 460 U.S. 1, 24-25 (1983).  The Supreme Court has stated the rule as follows:

> An order to arbitrate . . . should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. **Doubts should be resolved in favor of coverage.**

<u>United Steel Workers of America v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574, 582-83 (1960)(emphasis added).  Therefore, so long as the disputes at issue arguably or debatably are covered under the arbitration clause, the FAA requires that arbitration be compelled.

GSU Foundation's claims against Capstone Development are unquestionably subject to contractual Dispute Resolution and arbitration.  Exhibit 14.1 defines a broad scope of arbitrable disputes that includes any "claim, controversy or dispute" that "arises out of or relates to this Agreement."  GSU Foundation's claims involve an alleged breach of the Development

10

Agreement.   Complaint, Count I.   In addition, GSU Foundation claims that Capstone Development breached the warranty set forth in the Development Agreement.  Complaint, Count III.   The remaining counts arise from the same factual allegations, and thus "relate to" the Development Agreement work and requirements.   The broad language utilized in the clause combined with the liberal federal policy favoring arbitration means that the claims asserted in the Complaint against Capstone Development are subject to contractual Dispute Resolution, including arbitration.

## C.   THE COURT SHOULD STAY THIS ACTION PENDING DISPUTE RESOLUTION UNDER THE DEVELOPMENT AGREEMENT.

Under the FAA, Congress has provided that district courts are to stay actions properly referable to arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  Under Section 3 of the FAA, this action should be stayed, pending the outcome of Dispute Resolution under the Development Agreement between GSU Foundation and Capstone Development.   Such a stay not only honors the express written terms of the Development Agreement, but it also promotes judicial economy and efficiency.  Dispute resolution procedures may yield a settlement.  If not, this potentially complex construction dispute can be resolved through binding arbitration, sparing the Court's limited time and resources from a protracted construction case.

## CONCLUSION

For the reasons set forth above, Capstone Development respectfully request that the Court stay the pending lawsuit and order GSU Foundation to comply with the Dispute Resolution procedures clearly set forth in the Development Agreement, including binding arbitration.


Respectfully submitted, this 26th day of October, 2011.


/s/ Jason M. Tate
Jason M. Tate (Georgia Bar. No. 140827 )
jtate@gilbertharrelllaw.com
James L. Roberts, IV (Georgia Bar No. 608580)
jroberts@robertstate.com
Roberts Tate, LLC
P.O. Box 21828
400 Main St.
Cottage 1
St. Simons Island, Georgia 31522
(912) 638-5200 (phone)
(912) 638-5300 (fax)

James F. Archibald, III
Bradley, Arant, Boult, Cummings, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2119
Phone 205-521-8520
Fax   205-488-6520
Email  jarchibald@babc.com

*Attorneys for Capstone Development Corp.*

**CERTIFICATE OF SERVICE**

I hereby certify that I have electronically filed the foregoing with the Clerk of Court

using the CM/ECF system this 26th day of October, 2011:

Gerald M. Edenfield
Edenfield, Cox, Bruce & Classens, PC
P.O. Box 1700
Statesboro, GA 30458
*Counsel for Plaintiff*

Kent T. Stair
Carlock, Copeland & Stair, LLC
P.O. Box 56887
Atlanta, GA 30343-0887
*Counsel for Capstone Building Corp.*

Christopher M. Ziegler
Gray, Rust, St. Amand Moffett & Brieske, LLC
17th Floor
950 East Paces Ferry Road
Atlanta, Georgia 30026
*Counsel for Defendant BR Brick & Stone, L.P.*

*/s/ Jason M. Tate*
OF COUNSEL

13