IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| GEORGIA SOUTHERN UNIVERSITY HOUSING FOUNDATION ONE, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> CAPSTONE DEVELOPMENT CORP.; CAPSTONE BUILDING CORP.; and BR BRICK & MASONRY, L.P., <br><br> Defendants; <br><br> & <br><br> CAPSTONE DEVELOPMENT CORP., <br><br> Cross Claimant, <br><br> vs. <br><br> CAPSTONE BUILDING CORP., <br><br> Cross Defendant. | FILED
Scott L. Poff, Clerk
United States District Court

By jburrell at 3:05 pm, Oct 12, 2018 <br><br> CIVIL ACTION NO.: 6:11-cv-104 |

**O R D E R**

This matter is before the Court on two related pleadings: movant JLB Construction LP's ("JLB") Motion to Enjoin Arbitration, (doc. 95), and Plaintiff's Motion to Amend Complaint, (doc. 97). Through these pleadings and the supporting and opposing briefs, Plaintiff and JLB dispute, among other things, whether Plaintiff can assert claims against JLB even though the statutes of limitations and repose have already passed. As explained more fully below, Plaintiff's proposed Amended Complaint against JLB cannot relate back to the original filing of this action

more than seven years ago, and JLB is not equitably estopped from asserting the statute of repose. Consequently, Plaintiff's proposed Amended Complaint is futile and the Court **DENIES** Plaintiff's Motion to Amend, (doc. 97). Because the Court denies the Motion to Amend, JLB is not a party to this action. The Court cannot grant a non-party such as JLB the injunctive relief it seeks. Therefore, the Court **DISMISSES** JLB's Motion to Enjoin Arbitration, (doc. 95).

## BACKGROUND

On October 1, 2002, Plaintiff and Defendant Capstone Development entered into a contract for Defendant Capstone Development to design and construct student housing complexes on the campus of Georgia Southern University in Statesboro, Georgia. (Doc. 1-2, p. 8.) Defendant Capstone Building served as the general contractor on the project and conducted the actual construction. (Id.) On August 11, 2003, the project was completed, and certificates of occupancy were issued. (Id.) Plaintiff alleges that it subsequently discovered various defects in the workmanship and material of the project including improper venting and flashing installation as well as defects in the rowlock brick work and areas of water intrusion. (Id. at p. 9.) After Plaintiff notified Defendant Capstone Development and Defendant Capstone Building ("Capstone Defendants") of these alleged defects, those defendants retained BR Brick & Stone, L.P. ("BR Brick & Stone")[1] to repair the rowlock brick work. (Id.) BR Brick & Stone began this work in

---

[1] Plaintiff originally named BR Brick & Stone as a Defendant. (Doc. 1-2.) Then, on August 3, 2012, the parties jointly moved to drop BR Brick & Stone as a Defendant and to add BR Brick & Masonry, L.P. in its stead. (Doc. 74.) That Motion stated that "BR Brick & Stone had no involvement with any aspect of the dormitory construction or repairs at issue in this matter and that BR Brick & Masonry, L.P. was the masonry contractor for the original construction work." (Id.) The Court granted that Motion on August 7, 2012. (Doc. 75.) Then, on September 1, 2017, the Court granted Plaintiff and Defendants' Consent Motion to bring BR Brick & Stone back into the case as a Defendant. (Doc. 86.) However, Plaintiff did not subsequently move to amend its Complaint to rename BR Brick & Stone as a Defendant. While Plaintiff's proposed amended complaint does name BR Brick & Stone as a Defendant, its brief does not address the addition of this Defendant. The Court **DIRECTS** the parties to update the Court within **twenty-one (21) days** of the date of this Order of the status of BR Brick & Stone as a party to this case.

May of 2008.  (Id.)  Plaintiff contends that BR Brick & Stone caused further damage to the project in its attempt to repair the prior defects.  (Id. at p. 10.)

On August 11, 2011, Plaintiff filed this lawsuit in the Superior Court of Bulloch County, Georgia, against Capstone Development Corporation, Capstone Building Corporation, and BR Brick & Stone.  (Id. at p. 6.)  It alleged claims of Breach of Contract, Negligent Construction, Breach of Warranty, Breach of Contract to Repair, Negligent Repair, and sought attorney fees. (Id. at pp. 11–17.)  On September 16, 2011, Defendant Capstone Building removed the case to this Court with the consent of the other Defendants.  (Doc. 1.)  On September 23, 2011, Capstone Development filed a cross-claim against Capstone Building along with its Answer.  (Doc. 7, pp. 12–14.)  Since then, the case has endured a somewhat tortuous procedural history.  On May 3, 2012, the Court denied Plaintiff's motion to remand the case to the Superior Court and granted Defendant Capstone Development's motion to stay the case pending arbitration.  (Doc. 71.)

For the next five years, the parties took very little action before the Court, and the case remained stayed.  However, on August 24, 2017, the parties filed a consent Motion to Lift the Administrative Stay, Allow Discovery, and Add Defendants.  (Doc. 85.)  Therein, the parties provided the following update on the litigation:

> The parties exchanged voluminous documents from 2012 through 2017. During this document exchange, documents were discovered indicating that BR Brick & Masonry, LP may have subcontracted the masonry repair work at issue to BR Brick & Stone, LP and/or JLB Construction, LP, that the masonry repair work at issue may have been subcontracted to Creative Natural Solutions, Inc. pursuant to a Master Subcontract Agreement and Work Order, and that W.S. Outler, Inc. may have performed some work with respect to the repair work at issue.  Also during this document exchange, the Plaintiff, by and through its new counsel, on November 22, 2016, produced an engineering report, prepared by Elkin Engineering & Diagnostics.

(Id. at p. 3.)  The parties went on to explain that they planned to conduct a mediation in the case by the end of 2017.  (Id. at pp. 3–4.)  To facilitate that effort, they requested that the Court allow

them to conduct limited discovery and to add "BR Brick & Stone, LP" as a defendant. (Id. at p. 4.) Additionally, they stated, "[T]he parties show that the defendants, by and through counsel, shall be permitted to file cross-claims and third-party complaints to add necessary parties as third-party defendants; specifically, Creative Natural Solutions, Inc., W.S. Outler, Inc. and JLB Construction, LP, by and through BR Brick & Stone, LP and/or Capstone Building Corp." (Id. at p. 4.) This Motion was not filed by or served on Creative Natural Solutions, Inc., W.S. Outler, Inc., or JLB. (Id. at pp. 5–9.) On September 2, 2017, the Court entered the parties' proposed order providing for limited discovery and mediation as well as the addition of the proposed third-party defendants (including JLB) and of BR Brick & Stone, LP as a defendant. (Doc. 86.)

The parties did not settle the case at mediation. On March 14, 2018, Plaintiff filed a Demand for Arbitration with the American Arbitration Association against Capstone Development, Capstone Building, BR Brick & Stone, BR Brick & Masonry, and JLB. (Doc. 96-1.) On April 13, 2018, JLB filed a Motion to Enjoin that arbitration. (Doc. 95.) JLB argued that the Court should order that Plaintiff cannot file an arbitration action against it because "all applicable statutes of limitations and the applicable statute of repose for any potential claim that [Plaintiff] could have brought against JLB expired before August 31, 2017, the date this Court entered an Order stating that JLB was added to this case as a third-party defendant." (Id. at p.1.)

On April 26, 2018, Plaintiff filed its Response to JLB's Motion to Enjoin along with a Motion for Leave to file an Amended Complaint. (Doc. 97.) Plaintiff argued that JLB cannot move to enjoin arbitration because it is not a party to this lawsuit. (Id. at pp. 2.) Additionally, Plaintiff argued that JLB, BR Brick & Stone, and BR Brick & Masonry, are related entities that have participated in a "shell game." (Id. at pp. 3–4.) Plaintiff sought leave to file an amended complaint against JLB and to have that complaint relate back to the filing of Plaintiff's original

4

complaint under Federal Rule of Civil Procedure 15(c)(1)(B). (Id. at pp. 6–7.) Plaintiff argued that granting such leave to amend would "render[] JLB's statute of limitations and repose contentions moot." (Id. at p. 7.) Additionally, Plaintiff argued that JLB should be equitably estopped from asserting the statutes of limitations and repose. (Id.)

JLB filed a Reply in support of its Motion to Enjoin in which it argued that the Court had the authority to enjoin arbitration under the Georgia Arbitration Code. (Doc. 100, pp. 6–8.) JLB further reiterated its argument that Georgia's statute of repose as to improvement to real property claims, O.C.G.A. § 9-3-51, barred Plaintiff's claims against JLB. (Id. at pp. 9–11.) JLB also disputed Plaintiff's equitable estoppel argument. (Id. at pp. 11–16.) Plaintiff filed a Surreply in which it disputed JLB's position that the Georgia Arbitration Code provided the Court with authority to enjoin Plaintiff's efforts to bring JLB into arbitration. (Doc. 102.)

## DISCUSSION

### I.  Plaintiff's Motion to Amend

In its proposed Amended Complaint, Plaintiff continues to assert claims against Capstone Development, Capstone Building, and BR Brick & Masonry as well as BR Brick & Stone. (Doc. 97-18.) However, Plaintiff also brings, for the first time in this lawsuit, claims against JLB. (Id.) Specifically, Plaintiff claims "[BR Brick & Masonry], acting in concert with [BR Brick & Stone] and JLB, all acting as alter egos and/or agents of one another and/or having assumed portions of [BR Brick & Masonry's] subcontract, initially began the repairs to the rowlock brick at Southern Courtyard in May of 2008." (Id. at p. 4.) The Amended Complaint goes on to refer to BR Brick & Masonry, BR Brick & Stone, and JLB collectively as "BR." (Id.) Plaintiff alleges that these three collective defendants also conducted repairs to the brickwork at the Southern Pines portion of the project in May of 2008. (Id.) Plaintiff claims that the "BR" defendants negligently

5

installed the rowlock brick in a way that channeled water towards rather than away from the buildings causing "massive water intrusion problems." (Id.) Plaintiff proposes to sue JLB for negligent construction and to recover not less than $7,669,627.00 plus attorney fees from Defendants collectively. (Id.)

### A. Federal Rule of Civil Procedure 15

Under Rule 15(a), a party may amend its complaint once as a matter of right within twenty-one (21) days after service of a motion under Rules 12(b), (e), or (f). "The function of Rule 15(a), which provides generally for the amendment of pleadings, is to enable a party to assert matters that *were overlooked* or *were unknown* at the time he interposed the original complaint or answer." 6 Wright, Miller & Kane, Federal Practice and Procedure: Civil § 1473 (3d ed. 2018) (emphases added); see also In re Engle Cases, 767 F.3d 1082, 1108 (11th Cir. 2014). Even when a party may not amend as a matter of right, it may amend with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(b). Rule 15(b) suggests that a court "freely give leave when justice so requires." Id. While leave to amend is generally freely given, it is by no means guaranteed. A court should not allow leave to amend "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." In re Engle Cases, 767 F.3d at 1108–09 (quoting Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001)). The decision whether to grant a motion to amend is within the sound discretion of the trial court. Addington v. Farmer's Elevator Mut. Ins. Co., 650 F.2d 663, 666 (5th Cir. 1981). Additionally, pursuant to this Court's Local Rule 16.3, parties shall file all Rule 15 Motions to Amend within sixty (60) days after issue is joined in the case by the filing of an answer.

Federal Rule of Civil Procedure 15(c) provides specific instances where an amended pleading will relate back to the date of the original pleading for statute of limitations purposes. Pertinently, an amendment that "changes the party or the naming of the party against whom a claim is asserted" relates back when (1) the amendment satisfies the requirements of Rule (c)(1)(B), that is that the amendment "arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading"; and (2) within the time period prescribed by Rule 4(m) for serving the summons and complaint, the party to be brought in "(i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c).

### B. Whether Plaintiff's Motion to Amend is Futile Due to the Untimeliness of its Claims Against JLB[2]

JLB argues that Plaintiff's proposed claims against it would be futile because the claims are time-barred by Georgia's statutes of limitations and repose. (Doc. 95-1, p. 2.) JLB proposes that Plaintiff's claims center on acts of original construction that were completed in August of 2003, and repair work to those same buildings that ceased on June 25, 2009, when Plaintiff elected to remediate. (Id.) Thus, JLB argues that the applicable statutes of repose and limitations began to run on June 25, 2009. JLB contends that the earliest Plaintiff could be said to have commenced suit against JLB was August 31, 2017, when the Court issued its Order stating that JLB was a third-party defendant. (Doc. 95-1, pp. 5, 10–13.) JLB further reasons that between June 25, 2009, and August 31, 2017, the following periods all expired: the eight-year statute of repose for claims based on improvement to real property set forth at O.C.G.A. § 9-3-51; the six-year statute

---

[2] Plaintiff argues that the arbitrator, and not the Court, should assess the timeliness of Plaintiff's claims against JLB. (Doc. 97, pp. 8–9.) However, this Court, and not the arbitrator, must rule on Plaintiff's Motion to Amend. To rule on that Motion, the Court must assess the viability of Plaintiff's claims.

7

of limitations for breach of contract pertaining to building construction set forth at O.C.G.A. § 9-3-24; and the four-year statute of limitations for negligent construction set forth at O.C.G.A. § 9-3-30(a). (Id. at pp. 8–13.)

Plaintiff does not dispute that JLB did not work on the project after June 25, 2009, and that Plaintiff elected to remediate on that date. Further, JLB has introduced a letter that confirms this timeline. (Doc. 95-4, p. 3.) Additionally, Plaintiff did not assert any claims against JLB until it sought to amend its Complaint on April 26, 2018. Thus, at first blush, it appears that Plaintiff's claims against JLB are unquestionably futile as they are barred by the statutes of repose and limitations. However, Plaintiff attempts to skirt the operation of these statutes by contending that its claims against JLB should relate back to August 11, 2011, the date it filed its original Complaint. (Doc. 97, pp. 6–7.) Additionally, Plaintiff contends that JLB should be equitably estopped from asserting the statutes of response and limitations because BR Brick & Masonry and BR Brick & Stone did not reveal JLB's involvement until May of 2017. (Doc. 97, pp. 5, 7–9.)

**(1)   Standard of Review**

The Honorable Alan J. Baverman of the Northern District of Georgia rightly described the standard under which the Court reviews JLB's argument that Plaintiff's Motion to Amend is futile:

> The Eleventh Circuit has determined that 'denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal.' Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1263 (11th Cir. 2004) (quoting Burger King Corp. v. Weaver, 169 F.3d 1310, 1320 (11th Cir. 1999)). To determine if the proposed amendment is still subject to dismissal, a court accepts the facts pleaded in the proposed amended complaint as true and construes them in the light most favorable to the plaintiff. See Spanish Broadcasting Sys. of Fla., Inc. v. Clear Channel Commcn's, Inc., 376 F.3d 1065, 1077 (11th Cir. 2004). It appears that a court may also consider evidence outside of the complaint when reviewing a motion for leave to amend. See Thomas v. E.I. DuPont de Nemours & Co., Inc., 574 F.2d 1324, 1325 n.1 (5th Cir. 1978) ("Since our decision rests on the failure of the District Court to allow amendment of the complaint, consideration of the facts in [appellant's] affidavit is legitimate[.]"); United States Fire Ins. Co. v. United Limousine Serv., Inc., 303 F. Supp. 2d 432, 445 (S.D.N.Y. 2004) (reviewing

> affidavit to determine whether to grant plaintiff leave to amend the complaint).
>
> A proposed amendment is subject to dismissal "when it consist[s] of only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based." See Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1271 (11th Cir. 2004). The proposed complaint need not provide detailed factual allegations, but it must give sufficient factual allegations "to raise a right to relief above the speculative level," that is the complaint must give "only enough facts to state a claim to relief that is plausible on its face." See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). In other words, the complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Twombly, 550 U.S. at 555). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Twombly, 550 U.S. at 555 n.3.

Hall v. One Point Fin. LLC, No. 1:09-CV-1458-WBH-AJB, 2009 WL 10669420, at *3 (N.D. Ga. Nov. 24, 2009), report and recommendation adopted, No. 1:09-CV-1458-WBH, 2009 WL 10671366 (N.D. Ga. Dec. 30, 2009).

### (2) Plaintiff's Amended Complaint Cannot Relate Back under Federal Rule of Civil Procedure 15(c)(1)(C) Because it Seeks to Add a Defendant Rather than Change a Defendant.

Through its Amended Complaint, Plaintiff seeks to name JLB as a defendant but also names Capstone Development Corporation, Capstone Building Corporation, BR Brick & Stone, and BR Brick & Masonry as Defendants. (Doc. 97-18.) In other words, Plaintiff seeks to add JLB to the suit, rather than substitute JLB for one of the prior defendants. Under the plain language of Rule 15(c)(1)(C), an amended complaint only relates back when it "*changes* the party or the naming of the party against whom a claim is asserted." Fed. R. Civ. P. 15(c)(1)(C) (emphasis added). Thus, "the relation-back doctrine does not apply in instances where a plaintiff attempts to join entirely new defendants in addition to existing defendants." Stewart v. Bureaus Inv. Grp., LLC, 309 F.R.D. 654, 661 (M.D. Ala. 2015) (collecting cases holding the same); see also Onan v. County of Roanoke, 52 F.3d 321, at *2 (4th Cir. 1995) (unpublished) (explaining that

the provision that is now Subsection (c)(1)(C) "permits a plaintiff to name a new defendant *in place of* an old one, but does not permit a plaintiff to name a new defendant *in addition to* the existing ones") (emphasis in original). Plaintiff does not propose to "change" the party against whom a claim is asserted in its Amended Complaint, nor does it seek to add JLB as a defendant in place of one of the original defendants. Therefore, it cannot use Rule 15(c)(1)(C)'s relation back remedy to dodge operation of Georgia's statutes of repose and limitations.

### (3) The Relation Back Doctrine of Rule 15(c)(1)(C) Does Not Apply to Statutes of Repose.

Even if Plaintiff's proposed amendment fell within the ambit of Rule 15(c)(1)(C), the relation back principles of the Rule would not remedy Plaintiff's failure to comply with the statute of repose codified at O.C.G.A. § 9-3-51. While often confused or used interchangeably, statutes of limitation and statutes of repose differ distinctly from one another. "Whereas a statute of limitations establishes a time limit 'based on the date when the claim accrued,' a statute of repose bars 'any suit that is brought after a specified time *since the defendant acted*,' without regard to any later accrual." Sec'y, U.S. Dep't of Labor v. Preston, 873 F.3d 877, 883 (11th Cir. 2017) (emphases in the original) (quoting Black's Law Dictionary 1636–37 (10th ed. 2014)). While a statute of limitations is contingent, a statute of repose is absolute. Bradway v. Am. Nat'l Red Cross, 992 F.2d 298, 301 (11th Cir. 1993). "A statute of repose stands as an unyielding barrier to a plaintiff's right of action . . . . The statute of repose destroys the previously existing rights so that, on the expiration of the statutory period, the cause of action no longer exists." Id. (quoting Wright v. Robinson, 426 S.E.2d 870, 871-72 (Ga. 1993)). Consequently, "amended complaints cannot relate back 'so as to revive a cause of action already extinguished by [a] statute of repose.'" Alliant Tax Credit Fund 31-A, Ltd. v. Murphy, No. 1:11-CV-0832-RWS, 2014 WL 3955642, at *11 (N.D. Ga. Aug. 12, 2014) (quoting Macfarlan v. Atlanta Gastroenterology Assocs., Inc., 732

S.E.2d 292, 296 (Ga. Ct. App. 2012)); see also Wright, 262 Ga. at 846 (state law dismissal and renewal statutes could not overcome statute of repose); Resolution Trust Corp. v. Olson, 768 F. Supp. 283 (D. Ariz. 1991) (procedural relation back remedy of Fed. R. Civ. P. 15(c) could not apply to overcome substantive bar of statute of repose).

Other than arguing that JLB is equitably estopped from raising any timeliness defenses, Plaintiff never disputes the applicability of O.C.G.A. § 9-3-51 to its claims against JLB.[3] Further, Plaintiff does not dispute that the statute of repose began to run on June 25, 2009. Consequently, O.C.G.A. § 9-3-51's eight-year period of repose expired on June 26, 2017, at the latest.[4] Thus, by the time Plaintiff sought to sue JLB on April 26, 2018, the statute of repose had long since extinguished Plaintiff's claims against JLB. Plaintiff cannot rely upon Rule 15(c)(1)(C) to bring those claims back to life.

### (4) Plaintiff has Not Shown that it is Entitled to Equitable Estoppel as to the Statute of Repose.

Plaintiff also argues that JLB "should be equitably estopped from asserting the statutes of limitation and repose." (Doc. 97, p. 7.) Unlike a statute of limitations, a statute of repose cannot be tolled, even in the face of a defendant's fraud. Esener v. Kinsey, 522 S.E.2d 522, 524 (Ga. App. 1999). However, "in certain narrow circumstances, a defendant may be equitably estopped from raising the statute of repose as a defense." Balotin v. Simpson, 650 S.E.2d 253, 254 (Ga. App. 2007); see also Rosenberg v. Falling Water, Inc., 709 S.E.2d 227, 230 (2011) (discussing application of doctrine of equitable estoppel with respect to statutes of repose). Specifically, "if

---

[3] Plaintiff neglects to substantively address the statute of repose, much less recognize the critical distinctions between the statute of repose and the statutes of limitation. Rather, throughout Plaintiff's brief in support of its Motion to Amend, Plaintiff treats the statute of repose and statutes of limitations as one and the same. (Doc. 97.)

[4] June 25, 2017, was a Sunday. The Court need not and does not express an opinion as to whether Plaintiff had until the next weekday, June 26, 2017, to file suit within the statute of repose. Even assuming Plaintiff had until that date, it did not seek to sue JLB until months later.

11

evidence 'of defendant's fraud or other conduct on which the plaintiff reasonably relied in forbearing the bringing of a lawsuit' is found to exist, 'then the defendant, under the doctrine of equitable estoppel, is estopped from raising the defense of the statute of repose.'" Bullington v. Precise, 698 F. App'x 565, 569 (11th Cir. 2017) (quoting Esener, 522 S.E. 2d at 524); see also Wilhelm v. Houston Cty., 713 S.E.2d 660, 663 (Ga. App. 2011) (equitable estoppel appropriate "if the plaintiff reasonably relied on a fraudulent act or statement by the defendant that occurred after the plaintiff's injury accrued and, as a result of that fraud, the plaintiff did not file suit until after the repose period expired"). However, "the plaintiff must have acted diligently for equitable estoppel to be available after the fraud was first discovered or should have been discovered." Esener, 522 S.E. 2d at 524.

Plaintiff bases its equitable estoppel argument on the contention that JLB concealed its involvement in the at-issue repairs. (Doc. 97, p. 8.) As an initial matter, nowhere in its Amended Complaint, (doc. 97-18), does Plaintiff allege sufficient factual allegations to support this argument. This failure alone warrants the denial of Plaintiff's Motion to Amend. Pedraza v. United Guar. Corp., 114 F. Supp. 2d 1347, 1356 (S.D. Ga. 2000) ("[A] plaintiff must satisfy Federal Rule of Civil Procedure 9(b)'s requirement to plead with particularity in her complaint the facts giving rise to a claim of fraudulent concealment before a federal court will toll the statute of limitations."); see also Berhad v. Advanced Polymer Coatings, Inc., 652 F. App'x 316, 324 (6th Cir. 2016) (plaintiff must plead facts that, if true, demonstrate the application of equitable estoppel); Guerrero v. Gates, 442 F.3d 697, 706–07 (9th Cir. 2006) (plaintiff must plead with particularity the facts which give rise to equitable estoppel); Wasco Prod., Inc. v. Southwall Techs., Inc., 435 F.3d 989, 991 (9th Cir. 2006) ("[F]ederal courts have repeatedly held that plaintiffs seeking to toll the statute of limitations on various grounds must have included the

allegation in their pleadings[.]"); Bull S.A. v. Comer, 55 F.3d 678, 681–83 (D.C. Cir. 1995) (plaintiff has "burden of pleading and providing equitable reasons for non-compliance" with statute of limitations in order to seek tolling); Biltmore Ave. Condo. Ass'n, Inc. v. Hanover Am. Ins. Co., No. 1:15-CV-43, 2015 WL 12731927, at *3 (W.D.N.C. Sept. 3, 2015), report and recommendation adopted, No. 1:15-CV-43-MR-DLH, 2016 WL 406463 (W.D.N.C. Feb. 2, 2016) ("The party that seeks to rely on the doctrine of equitable estoppel to escape the application of the statute of limitations must plead sufficient factual allegations in the complaint to raise an issue as to the doctrine's application."); Speier-Roche v. Volkswagen Grp. of Am. Inc., No. 14-20107-CIV, 2014 WL 1745050, at *7 (S.D. Fla. Apr. 30, 2014) ("[T]o invoke a fraudulent concealment toll, Plaintiff must plead facts establishing that Defendant deliberately and actively concealed the material facts for the purpose of inducing her to delay filing this action."); Abercrombie v. Andrew Coll., 438 F. Supp. 2d 243, 265 (S.D.N.Y. 2006) ("[W]ithout adequate pleading, [equitable estoppel] is not properly raised and therefore cannot defeat a motion to dismiss based on statute of limitations grounds.").

Moreover, even if Plaintiff was not required to include allegations supporting its equitable estoppel argument in its Amended Complaint, it has failed to support its argument in its Motion to Amend and supporting briefs. Plaintiff argues that JLB, BR Brick & Stone, and BR Brick & Masonry operated a "shell game" whereby all three entities took actions on the project. (Doc. 97, pp. 3–4.) Even if this was the case, Plaintiff has failed to show that JLB's "fraud or other conduct" prevented Plaintiff from learning of this arrangement or that Plaintiff "reasonably relied" upon some assertion or action of JLB in forbearing suit against JLB. Bullington, 698 F. App'x at 569. Quite the contrary, Plaintiff states that "[e]ven without full discovery" it is readily apparent that "the three Bolin entities [which include JLB] engaged in activities related to the events at issue

. . . ." (Doc. 97, p. 4.) Indeed, Plaintiff has attached e-mails from 2008 that readily reveal JLB's involvement in the project. (Doc. 97-4; doc. 97-5.) Plaintiff has failed to plausibly explain how JLB kept Plaintiff from discovering this information. Particularly given that this case has been pending since August 11, 2011, it is compelling that Plaintiff has not averred that some action or assertion by JLB (or any of its alleged "alter egos") prevented Plaintiff from learning of JLB's involvement within O.C.G.A. § 9-3-51's eight-year period.[5]

Furthermore, by its own admission, Plaintiff knew of JLB's involvement before the June 26, 2017 expiration of the statute of repose. Plaintiff states that it learned of JLB's involvement in May of 2017, and it attaches e-mails from May 4, 2017, in which counsel discussed that "JLB Construction hired Creative Natural Solutions to do the repair work." (Doc. 97, p. 5.) Therefore, even if Plaintiff had shown that JLB concealed its involvement in the project, Plaintiff cannot show that the concealment prevented Plaintiff from filing suit against JLB within the statute of repose. Despite this knowledge, Plaintiff did not seek to name JLB until April 26, 2018, approximately a year after the date Plaintiff states it learned of JLB's involvement. Not only does this thwart Plaintiff's argument that JLB prevented Plaintiff from complying with the statute of repose, it also demonstrates that Plaintiff did not "act[] diligently . . . after the [alleged] fraud was first discovered or should have been discovered." Esener, 522 S.E. 2d at 524.

Plaintiff argues that it did not file suit against JLB because Plaintiff "had every reason to anticipate" that BR Brick & Stone and BR Brick & Masonry would add JLB as a third-party defendant following the parties' August 24, 2017 Consent Motion. (Id. at p. 8.) This argument fails for several independent reasons. As an initial matter, the Consent Motion could not have reasonably prevented Plaintiff from suing JLB within the statute of repose, because the parties

---

5 Though this case was stayed for years, Plaintiff could have moved to lift the stay at any time. Moreover, according to the parties' Consent Motion, the "parties exchanged voluminous documents from 2012 to 2017." (Doc. 85, p. 3.)

filed the Consent Motion after the expiration of the statute. Further, Plaintiff fails to explain why a third-party complaint against JLB by one of the Defendants would have obviated the need for Plaintiff to sue JLB directly. Moreover, neither JLB nor its counsel participated in the filing of the Consent Motion. Furthermore, the parties' Consent Motion by no means made clear that BR Brick & Stone or BR Brick & Masonry would file a third-party complaint against JLB. To be sure, at some points in the Motion, the parties requested that the Court add JLB and others as third-party defendants. However, no defendant obligated itself to file a third-party complaint, much less moved to do so. Rather, the parties merely requested that the Defendants be permitted to file such a pleading. (Doc. 85, p. 4 ("[T]he parties show that the defendants, by and through counsel, shall be permitted to file cross-claims and third-party complaints to add necessary parties as third-party defendants; specifically, Creative Natural Solutions, Inc., W.S. Outler, Inc. and JLB Construction, LP, by and through BR Brick & Stone, LP and/or Capstone Building Corp.").)

For all these reasons, O.C.G.A. § 9-3-51's eight-year statute of repose thwarts Plaintiff's attempt to sue JLB nearly nine years after JLB performed work on the project in question. Therefore, Plaintiff's Motion to Amend, (doc. 97), is futile and the Court **DENIES** Plaintiff's Motion.

## II.     JLB's Motion to Enjoin Arbitration

JLB argues that because Plaintiff's claims against it are barred by Georgia's statutes of repose and limitation, Plaintiff cannot haul it into arbitration. (Doc. 95.) Therefore, JLB requests that the Court enjoin Plaintiff's attempted arbitration as to JLB. (Id.) In addition to opposing JLB's timeliness arguments, Plaintiff argues that the Court cannot grant JLB the injunction it seeks because JLB is not a party to this action. (Doc. 97, p. 2.)

JLB correctly asserts that federal courts have authority to issue orders enjoining arbitration

in some instances. "The Federal Arbitration Act expressly provides that a federal court may order parties to submit to arbitration any issues 'referable to arbitration' that arise under a contract containing an arbitration agreement. 9 U.S.C. § 3. This provision has been interpreted to authorize the courts to enjoin an arbitration to prevent the exercise of arbitration jurisdiction over someone who never agreed to arbitrate the dispute in question." Leevers v. Bilberry, No. 4:04-CV-34 (CDL), 2007 WL 315344, at *3 (M.D. Ga. Jan. 31, 2007). However, the Court must exercise this authority within the Court's traditional jurisdictional restraints. See Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 581–82 (2008) ("As for jurisdiction over controversies touching arbitration, the [Federal Arbitration Act] does nothing, being 'something of an anomaly in the field of federal-court jurisdiction' in bestowing no federal jurisdiction but rather requiring an independent jurisdictional basis.") (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n.32 (1983)); Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1110 (11th Cir. 2004) ("Of course, if a party makes a motion to compel arbitration under 9 U.S.C. § 4, a district court must determine if there exists a case or controversy in order for it to exercise its jurisdiction over that motion to compel."). Pertinently amongst those restraints is the fact that federal courts ordinarily lack authority to grant affirmative relief to a non-party. Catanzaro v. Michigan Dep't of Corr., No. 08-11173, 2009 WL 2139210, at *1 (E.D. Mich. July 14, 2009) ("This Court has no authority to order relief for a non-party."); see also Doctor's Assocs., Inc. v. Reinert & Duree, P.C., 191 F.3d 297, 302 (2d Cir. 1999) ("Subject to exceptions, a court's *in personam* order can bind only persons who have placed themselves or been brought within the court's power."); S.E.C. v. Lauer, No. 03-80612-CIV-MARRA, 2007 WL 1394001, at *1 (S.D. Fla. May 2, 2007) ("First, because [the movant] is not a party to this action and she has not sought to intervene, this motion is not properly before the Court. A prospective intervenor is not a party

and does not have standing to seek any relief other than leave to intervene."). JLB has provided no grounds for the Court to ignore this jurisprudential principle in this case. JLB has not cited any case where a federal court found that a non-party had standing to obtain an injunction, much less an injunction preventing arbitration.

In its Reply, JLB contends that the Georgia Arbitration Act, contained within the state's Civil Practice Act, provides the Court with authority to rule on JLB's Motion to Enjoin. (Doc. 99, pp. 6–9.) As an initial matter, the Court rejects this argument because JLB failed to raise the argument in its original brief and, thus, cannot do so in its Reply. Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir. 2005) ("Arguments raised for the first time in a reply brief are not properly before a reviewing court."); see also United States v. Whitesell, 314 F.3d 1251, 1256 (11th Cir. 2002) (court need not address issue raised for first time in reply brief); United States v. Dicter, 198 F.3d 1284, 1289 (11th Cir. 1999) (issue raised for first time in reply brief waived); United States v. Martinez, 83 F.3d 371, 377 n.6 (11th Cir. 1996) (declining to consider arguments raised for the first time in reply). Moreover, the procedural provisions of state law, contained within the Georgia Civil Practice Act, may not obviate federal limitations on this Court's jurisdiction and cannot determine JLB's standing in this Court. See Tank v. Chronister, 951 F. Supp. 182, 184 (D. Kan. 1995) ("Defining the parameters of diversity jurisdiction is a matter of federal law, and should not be subject to definitions and procedures enacted by state legislatures.").

Additionally, even if the Georgia Arbitration Code applied, the statute does not appear to permit the method JLB employed. Specifically, rather than a non-party motion like JLB filed here, the Code requires that all applications "shall be filed *in the same manner as a complaint in a civil action*." O.C.G.A. § 9-9-4(a)(1-2) (emphasis added). Thus, even under the state authority

JLB advances, JLB would at least have to be a party before the Court to obtain an injunction.

For all these reasons, the Court has no authority to grant non-party JLB the injunctive relief it seeks. Therefore, the Court **DISMISSES** JLB's Motion to Enjoin Arbitration, (doc. 95).

## CONCLUSION

The Court **DENIES** Plaintiff's Motion to Amend, (doc. 97), and **DISMISSES** JLB's Motion to Enjoin Arbitration, (doc. 95). Additionally, because no party has filed any claims against JLB Construction, LP, W.S. Outler, Inc., Creative Natural Solutions, Inc., the Court **DIRECTS** the Clerk to terminate these parties as third-party defendants on the docket of this case. The Court **DIRECTS** the parties to update the Court within **twenty-one (21) days** of the date of this Order of the status of BR Brick & Stone as a party to this case.

**SO ORDERED**, this 12th day of October, 2018.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA